UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS McLAIN

    Plaintiff,

v.

DAVID J, SHULKIN, MD., Secretary,
DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.

_____/

Case No.: 8: 17 cv 1283 T 35 TSn

## COMPLAINT AND DEMAND FOR JURY TRIAL
## INJUNCTIVE RELIEF REQUESTED

Plaintiff, Dennis McLain complains of Defendant, David J. Shulkin M.D., Secretary, Department of Veterans Affairs as follows:

1.    This court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including 42 U.S.C. § 2000e-16 and 42 U.S.C. § -2000e-2(m).

2.    Plaintiff has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 as amended including having exhausted his administrative remedies.

3.    James A. Haley VA Healthcare System (Haley VAHCS, is a Veterans Administration (VA) hospital and medical center with related services. It is located in Tampa Florida, Hillsborough County. It is broken down into various services, including the Nursing Service. The Plaintiff has been a Registered Nurse at Haley VACHS since 2005, currently at a Nurse 2/Step 11. He is also a union representative under the NNU and he has represented, over the years, nurses in labor management disputes, EEOs and other related matters.

TSA - 43813
$400

1

4.     At all times material to this complaint, Laureen Doloresco (Doloresco) was the Chief Nurse Executive over all nursing. She has overall managerial control of the service and strong influence over its operations. She is the Plaintiff's third line supervisor. Teresa Heckley (Heckley) is a Nurse and is the first line supervisor of the Plaintiff. Christopher Schweighardt, Chief of Acute Care is the second line supervisor of the Plaintiff at Haley VAHCS. For the period of December 2014 through December 2015, Cary Burcham (Burcham) Chief of Acute Care was his second line supervisor. Jessica Ferraro (Ferraro) was the Administrative Officer GS-0341-11, Nursing Administration at Haley VAHCS at material times and her supervisor is Doloresco.

5.     The Defendant has engaged in harassment of employees and a pattern and practice of retaliation for engaging in EEO activity including opposing harassment and discrimination, the filing of informal and formal Equal Employment Opportunity ("EEO") claims, participation in this EEO activity or participation as a witness or as a union representative/steward on behalf of other parties' EEO claims. This retaliation for EEO activity went on throughout all material times.

6.     The Plaintiff was a victim of reprisal as the result of his EEO activity. This included representation of fellow employees in his role as a union representative in EEO discrimination matters and his opposition to discrimination against other employees. He has fully participated through advising, processing and engaging in mediation of complaints. The Plaintiff has also engaged in his own EEO activity including filing his present informal complaint on July 1, 2015. He filed his formal complaint on August 18, 2015. He filed an amended claim on October 23, 2015. He filed another amended claim on December 8, 2015. He has also fully participated in his case through discovery, depositions and hearings. More

2

than 360 days have passed since he formally filed his complaint, thus satisfying the jurisdictional requirements of 42 U.S.C. 2000e- 16(c).

### GENERAL ALLEGATIONS

7.    The Plaintiff was hired as a nurse at Haley VACHS in 2005. While the Plaintiff was employed as a registered nurse, he took the position of Assistant Director of the NNU Union under Linda Tineo and he was a union representative.  In October 2010 and October 2012, Gina McLain (Mrs. McLain), Plaintiff's wife, had been a union representative in two EEO cases at Haley VACHS. The Plaintiff was substituted as the union representative in March 2013.

8.    In 2013, the Plaintiff represented an employee who alleged EEO retaliation involving age and racial discrimination.

9.    In July 2014, a senior ER/LR representative, Dan Pacheco II, threatened McLain in an email by writing that burning bridges with management results in bad times for everyone. The Plaintiff was aware from his representation of employees that Doloresco had retaliated against other employees based on their EEO activity. McLain noted Doloresco's reprisal against one of the EEO complainants for which he was the representative.

10.    In 2014, as a union representative, he was involved in two EEOs which both involved Doloresco.  Discriminatory hiring and promotion practices were alleged and in December 2014 he told Doloresco and Michael Benning, the EEO manager about it. Doloresco became aware that the Plaintiff was a union representative in each case.  One of the 2014 cases created a discussion with the VISN 8 director about the conduct of Doloresco and the medical center director at that time, in removing the employee out of the area. This case was a well- known issue.  The second 2014 case was about a discriminatory job hiring.  The

3

complainant was a female Filipino and she was alleging discrimination in the hiring or promotion process for a Nurse Manager position. Doloresco was the selecting management official in that case.   During a meeting in January 2015 with the EEO Counselor, Michael Benning and Doloresco, the Plaintiff pointed out of the 51 nursing managers at that time, only a handful were African- Americans and Asian-Americans, far below their respective share of the nursing population.   The Plaintiff alleged that there was systematic discrimination. Doloresco became upset. The Plaintiff initially had difficulty obtaining relevant information from Doloresco, Human Resources (HR) and the Director of the Hospital.  However, he later obtained information confirming the discrimination.  The Plaintiff ceased representing this complainant in April 2015 when she hired an attorney to pursue her case.

11.    Later in 2015, McLain represented his wife, Mrs. McLain, in an EEO case filed in May 2015 against her supervisor Elaine Cohen.  Doloresco was present during the mediation of this case in May 2015 and also present for mediation of a second case filed by Mrs. McLain in December 2015 related to retaliation where Elaine Cohen mentioned there was a fear that Mrs. McLain was using EEO "as a platform" as a reason for the proposed disciplinary action.

12.    April Dierickx (Dierickx) who was the Assistant Nurse Manager, Title 38, Series 0610, Level III Step 6, whose supervisor was Doloresco, provided a statement that Doloresco made derogatory comments about the Plaintiff and his wife.  She testified that Doloresco had an adversarial relationship with the Plaintiff.   Other Nurse Managers have noticed and commented upon this animus.

13.    A union representative can sue for retaliation as a union representative (engaging in participation or opposition) when he either directly represents co- employees in discrimination matters, or assists outside counsel when representing his co-employees in

discrimination matters against the same employer. *Morgan v. Napolitano,* 2001 WL 2422986 [* 2, 12]   (E.D. Cal. 2011) and *Morgan v. Napolitano,*   988 F. Supp. 2d 1162, 1179-1180 (E.D. Cal. 2013), EEOC is in concurrence.   See *Hall v. Potter,* EEOC DOC 07A20136, 2003 WL 21251791 [*1,3-4] ( May 22, 2003). See also *Jones v White*, EEOC DOC 01A05125, 2001 WL 1650737, [*1-2] (December 13, 2001).

14.   Doloresco is the most powerful managerial person in Nursing.  She has at times when talking to Nursing management criticized, made fun of and expressed animosity towards the Plaintiff and his wife, including times when she referenced their union roles or EEO activity.  For example, on or about December 2015 she was overheard telling Jon Venuti that she "hated Dennis McLain".  On or about December 6, 2015, Mrs. McLain informed the Plaintiff that she was approached by a service chief who asked her if she was alright. The service chief stated concern for her because they had been friendly in the past.  The service chief informed Mrs. McLain that Doloresco wanted to get rid of her and the Plaintiff because of EEOs that were filed.  This was said openly by Doloresco during a meeting where service chiefs were present. The Plaintiff's understanding is that Doloresco said "the McLains keep filing EEO's and I would like to get rid of both of them." The Service chief also told Mrs. McLain, "Hey, you have an active EEO case.  You better watch out because she said she's going to get rid of both of you."

15.   On or around May 18, 2015, a meeting was held involving Doloresco and every available subordinate Chief Nurse and Nurse Manager.  Most attended this meeting in person, but a number who could not attend in person, called in and listened over the phone. The Plaintiff was not present, but his wife was listening on the phone.  Doloresco made fun of both the Plaintiff and his wife for applying for the Chief of Operations position. While Mrs.

McLain listened via the telephone she heard Doloresco state that "our union partners (Mr. and Mrs. Union) have applied for the Chief Nurse of Operations job". Both Mr. and Mrs. McLain along with others had applied. However, Doloresco singled them out and started laughing and then others started laughing. A number of managers attending the meeting have admitted they also heard the remarks. Many others claim a lack of knowledge or did not respond. Mrs. McLain subsequently complained. Doloresco had subordinates direct all managers to provide statements. Several managers have admitted in depositions that it is unheard of that a selecting official will mention a couple of people (out of many) who had applied for a job. For example, Denise L. Harrison, a Nurse Manager who participated during this meeting, testified during deposition to that fact and also testified that it was known and believed that Doloresco did not like the Plaintiff. Doloresco later admitted this was improper. Several others believe it was a prohibited personnel practice under 5 USC § 2302(b). The Plaintiff and many others have never heard job applicants discussed in front of other people, and he believes this is a prohibited personnel practice. This statement evidences union and EEO animus, because the Plaintiff's union activity involved representing visible EEO complainants. Being subject to ridicule in public and having the senior nurse executives view him with ridicule or scorn creates an inherently hostile work environment affecting his ability to get fair treatment for the nurses he represents and his own opportunity to advance. The ridicule has cost him the opportunity of being promoted. Nobody is going to hire or promote someone whom the senior boss is making fun of or being hostile towards.

16. On or around May 25, 2015, Nursing's Employer/Labor Relations (ER/LR) representative from Human Relations, Perez, was speaking to a group of Nurse Managers and other management officials when the Plaintiff was not present. Perez looked at the Plaintiff's

6

wife, Mrs. McLain, who was present at the meeting, and pointed his finger toward her and stated that "I am just going to say this whether it is right or wrong and I don't care who tells that I said this, but the NNU is not Mr. and Mrs. NNU." At the time Mrs. McLain had left the union.  However, when she was in the union, Mrs. McLain had initially represented an employee with an EEO claim of workplace harassment in late 2012.  In April 2013, Mr. McLain was named as the employee's representative and continued thereafter.  As retaliation, the managers made up charges against the employee that were later found baseless. Mr. Perez worked the case for ER/LR providing advice to management.  Perez wanted Mrs. McLain, as a union representative, to allow charges against the employee that Mr. Perez and Mrs. McLain knew were false. Mrs. McLain objected.  Mr. Perez stated, "You know he is a bad nurse". The Plaintiff later represented the same employee in the EEO and used this information as part of his case.

17.    In an email dated April 20 2015 (4:13 pm), Mrs. McLain wrote to Mr. Perez (same day as the incident) that she was made very uncomfortable by Mr. Perez's comments to her in front of her colleagues. She further stated that Mr. Perez's statement "Mr. and Mrs. NNU" could be misinterpreted.  When Mr. Perez made his statement there were about 100 management officials at the meeting.  He directly pointed at the Plaintiff's wife during the training even though at that time she had left the union and had a lower level manager's position.

18.    Ms. Doloresco also became involved in a grievance filed by a nurse who had a doctorate in nursing, against her Nurse Manager, Lucille Raia in or about 2014.   The grievance focused upon an evaluation, but this employee also believed that Raia downgraded her because of her disability, a partially paralyzed lower leg which did not impair her ability

to do her job. After this employee was hired, Raia found out about her leg and said if she had known about it she would not have hired this employee. Raia later downgraded her evaluation. Raia was a Chief Nurse and Doloresco was Raia's immediate supervisor and a close friend, confidante and traveling companion of Raia. Raia told several people that Doloresco would always support her in whatever she did. In this case, Doloresco denied the grievance. Later this employee moved to the Community Living Center (CLC) under a different Chief Nurse in Nursing to get away from Raia. When the CLC Chief Nurse retired, Raia told a Nurse Manager who was acting as the Chief Nurse in the CLC, Tammie Terrell, not to have this employee involved in running the CLC. However, this employee was already assisting Terrell in running the CLC. When Terrell talked to this employee about it to see what was going on, word got back to Raia who criticized Terrell. Doloresco then chose an outside nurse for the Chief Nurse of the CLC rather than Terrell who was highly respected in the CLC and who the prior CLC Chief Nurse had groomed for the job. The selectee had no CLC experience and has had considerable difficulty doing the job. The Plaintiff was also an advisor to this employee and subsequently for Tammie Terrell and for a short period of time an EEO representative for her.

## Lost Opportunities

19.     In addition to being ridiculed and criticized for protected activity, the Plaintiff has lost opportunities to advance.

20.     First he was not selected for the position for Chief Nurse Mental Health. In late October 2014, Haley VACHS advertised a position for Chief Nurse Mental Health, VN4 under job announcement ZX-15-BTA1232816 through USA Jobs. The Plaintiff was not even interviewed for the job. Linda Madaris (Madaris) is the Assistant Chief Nurse,

SCI/Rehabilitation, Nurse IV at Haley VAHCS, and her second line supervisor is Doloresco. She was on a panel for the Chief Nurse of Mental Health position in November 2014. Terri Calvin-Balser (Calvin-Balser) who is a Nurse Manager, Grade 3 in the Acute Recovery Center 1 (ARC1) at Haley VACHS, and whose second level supervisor is Doloresco, was on the interview panel for the Chief Nurse of the Mental Health position. AO Ferraro, who was directly supervised by Doloresco, was also involved in the selection process for the Chief Nurse of Mental Health position. She scored the applicants to determine who would qualify for an interview. Madaris was the panel member who reviewed her scoring. Bob Blackwood (Blackwood) is the Chief, Social Work Service, GS-0185-14 at Haley VAHCS and he was on the panel for the Chief Nurse of Mental Health position. Deborah Sanchez, (Sanchez) is the Chief of the Psychiatry Section, Mental Health and Behavioral Sciences Service, Physician VM15 at Haley VAHCS. She was on the panel for the Chief Nurse of Mental Health position. Blackwood was asked by Doloresco to coordinate it. Perez is an ER/LR specialist at Haley VAHCS, and has had to work with the Plaintiff on a number of labor/union matters. After Ferraro scored the applications of candidates to determine who qualified for an interview,  Blackwood, Cavin-Balser, Madaris, and Sanchez were on the panel for the Chief Nurse Mental Health and they conducted the interviews and made the recommendations for the top candidates.  Doloresco was the selecting official for this position. Greg Ulma was chosen for this position after the interviews.  He was the lowest scoring applicant.

21.     The Plaintiff was scored incorrectly and not given a chance to interview. According to the scoring tool used, points were given for being a Veteran, having a degree, ANE experience, NM experience, certification, and total years in the VA. The selectee was granted a point for being service connected for this Title 38 position despite the fact that this

was not a selection criteria. Conversely, the Plaintiff was not given credit for his degree and being certified as a psychiatric mental health nurse practitioner. This should have conferred a total score of 8 which should have put him two points above the cutoff for an interview. In fact, another candidate Ms. Glick Soffler was given credit of two points with the same degree as the Plaintiff.

22.    The Plaintiff was more qualified than the selectee relevant to education and experience specific to the area he was eventually hired to manage. The selectee had no practical experience or training in mental health. The Plaintiff did.

23.    The selectee was the lowest scoring candidate to get an interview and had less management, supervisory, leadership experience and a lower education level than other candidates that were not selected. Conversely, the Plaintiff was denied the opportunity to interview. The scoring tool for determining the interviewees was performed by Doloresco's assistant, Ferraro who plainly mis-scored the Plaintiff and another Doloresco subordinate allowed the incorrect scoring of the Plaintiff to stand.

24.    In addition to his education, clinical experience as a mental health nurse and his certifications, the Plaintiff has also represented over 1000 bargaining unit employees and had for at least two years prior to this job application. In his role, the Plaintiff functions in disciplinary actions, employee satisfaction issues, quality improvement initiatives, and scheduling issues which are dealt with on a daily basis by management officials. The Plaintiff had at the time of the meeting given presentations to hundreds of management officials at Haley VACHS, including presentations to nursing leadership at the Management Academy (12/5/13) and Clinical Management Operations Class.  The Plaintiff was awarded the Preceptor of the Year for USF (James A Haley employee) for 2010. At the time of the job

posting, the Plaintiff was a member of both the local and VISN 8 Labor Management Forum councils and the expert panel on Staffing Methodology. Additionally, the Plaintiff conducted at least monthly meetings with the Medical Center Director and the Chief Nurse meetings and was a member on numerous hospital-wide committees. He was also at the time an instructor for Prevention and Management of Disruptive Behavior (PMDB) as well as an instructor for Civility, Respect, and Engagement in the workplace which are classes frequently taught to staff including the employees in mental health. All of this background was ignored.

25.     The highest scoring candidate was the employee discussed in ¶ 18 above, had previously also filed an EEO naming Doloresco as the responsible management official. The plaintiff represented this employee for a period of time as her EEO representative.

26.     Mrs. McLain who also scored higher than the selectee, was also not selected for an interview.

27.     The Plaintiff believes that his EEO activity and Doloresco's expressed hostility to him were key factors in his non-selection for an interview for the position or any other position.

28.     On April 20, 2015, the Plaintiff applied for the Chief Nurse of Operations VN Job number ZX-15-BTS- 1387701 through USA Jobs. Kathleen L. Cole (Cole) was a nurse at Haley VAHCS in 2015. She was the Selecting Officer for the new Chief Nurse of Operations position (ZX-15-BTS-1387701) at the request of the Associate Director for Patient Care/ Nursing Services for Haley VAHCS, Michelle Wilt (Wilt). Wilt is Chief Nurse of Operations at Haley VAHCS. In 2015, she was a panel member for the new Chief Nurse of Operations position (ZX-15-BTS-1387701).   Brenda Brinkley (Brinkley), who was the

Chief Nurse for the Surgical Service for the VA at North Florida/ South Georgia, Gainesville, was chosen to be a panel member for the new Chief Nurse of Operations position at Haley VACHS (ZX-15-BTS-1387701). Tina Liston (Liston) who is employed as Chief of Operations and Medicine at the VA at North Florida/ South Georgia, Lake City facility, was a panel member for the new Chief Nurse of Operations position at Haley VACHS (ZX-15-BTS-1387701). Jon Venuti, (Venuti) who is the Health System Specialist, GS-0671-13, Office of Patient Care/Nursing Services at Haley VACHS, and whose supervisor is Doloresco, acted as a staff resource facilitator for the new Chief Nurse of Operations position at Haley VACHS (ZX-15-BTS-1387701) and prepared the scoring toll used to evaluate the employees along with Ferraro and Nurse Recruiter Cathy Hendrix. Cole was Selecting Officer for the new Chief Nurse of Operations. Wilt, Brinkley and Liston were on the panel. Venuti, acted as a staff resource facilitator for the new Chief Nurse of Operations position. The Plaintiff submitted his application but was not interviewed. Another employee was hired after the selection process was completed. The Plaintiff was not given a reason why he was not selected for the position. Mrs. Hendrix was later selected for a management position on a panel run by Ms. Ferraro who also sat on the panel and has admitted that the two are personal friends.

29.    On or around December 2, 2015, Mrs. McLain informed the Plaintiff that she was approached by a colleague who had overheard Doloresco talking with Venuti in the hallway next to Doloresco's office. She stated that she "hated Dennis McLain". Mrs. McLain told the Plaintiff about this incident the same day or within a couple of days of the event. This comment was part of the pattern of behavior of the senior nursing leadership that impacted his ability to be promoted and his ability as a union representative to represent

nurses. Doloresco's display of this degree of animus, coupled with making fun of his and Mrs. McLain's job qualifications and stating that she wants to get rid of him, made it very difficult to work and advance.

30.      The Plaintiff had significant qualifications for this position.  Two of the qualifications of the job were chair of a staffing methodology committee and senior consultant for labor relations. He is one of four or five people who sit on the highest level of expert panel for staff methodology and no one else at that level applied for the job.  He stated that there are a lot of technical and legal ramifications and a lot of knowledge that a person needs to have in order to participate in labor relations and the union.  According to the job posting itself, two of the expected job roles for Chief of Operations were Staffing Methodology Chair and Senior Consultant for Labor Relations.  At the time of Michel's hiring, the Plaintiff does not believe that she had either upper level staffing methodology experience, or significant labor experience.  The Plaintiff states that he sat on the expert panel (highest level) for staffing methodology and functioned directly in  labor management relations for approximately three years prior to her hiring. The Plaintiff's non-selection for this position was based on his EEO activity.

31.      In September 2015, the Plaintiff applied on USA jobs for the Chief Nurse position, vacancy announcement ZX-15-1503742.  He was interviewed by Karen Proctor, (Proctor) Nurse Manager, ICU, Dr. Kothari, Quality Management Physician, and Cheryl Stephen-Rameau, the new Chief of the CLC chosen over Terrell. Proctor told him that he interviewed well.  No one was selected for that position, although later the job opening came up again, and he applied for it again. However the job was still vacant in 2016.

32.      The Plaintiff was qualified to be selected to that vacant position because he had been a critical care nurse for the past twenty (20) years in the VA and he has represented a thousand nurses in disciplinary actions, EEO processes, and systems issues. No one except a Chief Nurse of a VA, would over qualify him compared to looking at the qualifications for Nurse Manager.   He has had strong experience in communications and in systems issues impacting critical care and acute care daily that would highly suit him for this job vacancy.

33.      Plaintiff's EEO Activity was a key factor for his non selection to this job vacancy.

34.      Based upon his dealings with her, Plaintiff believes that Doloresco feels she can get what she wants, given her position.   It is a significant thing to threaten to fire people in the service line because they filed EEOs.  Plaintiff stated that anyone could hop on Doloresco's train of retaliation, and see that it is open season for retaliation against him. Similar conduct has been found to evidence retaliation. *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010).

35.      The Plaintiff later noticed on the homepage of the VA's website, a site where employees could report bullying and harassment, confidential information regarding a nurse's complaints of bullying in the workplace.   McLain notified the VA that this information should not be on a public site on the Homepage for the VA as it contained information which is confidential in nature.  The VA did nothing in response to his bringing this to their attention.   McLain then filed a complaint on September 24, 2016 with the Dept. of Labor for violation of employee confidentiality rules and regulations.   Subsequently, McLain checked the site again and this time found an anonymous complaint calling himself and his wife narcissistic and bullying and disclosing that he had filed a complaint (this EEO)

14

against the VA. Despite the contents on the website being a violation of federal workplace policy, the Agency specifically refused to investigate. Further, the Agency ordered a fact finding charging the Plaintiff with a HIPAA violation when he is not currently a supervisor and the employee in question was never a patient of the Plaintiff or the VA hospital. Therefore, management should have been aware that it would have been impossible for him to have violated the employee's HIPAA protections and were instead using the fact finding as continued harassment.

36.     Each of the employees of the VA as described herein were employed by the Defendant and were acting within the course and scope of his or her employment with the Defendant at the time of the conduct described herein. Each of the employees was there during the relevant times of this complaint.

## COUNT I

### Retaliation

37.     Plaintiff, Dennis McLain sues David J. Shulkin as Secretary of the Department of Veterans Affairs, for retaliation under Title VII.

38.     Plaintiff incorporates and re-alleges paragraphs 1 through 36.

39.     Plaintiff engaged in EEO activity which is protected under Title VII that included good faith opposition to unlawful discrimination as well as his participation as a union representative, representing employees in EEO cases involving management and as well as in his own EEO case.

40.     As alleged in paragraphs 5-35 above the Defendant was aware of the Plaintiff's protected EEO activities.

41.     The discrete acts alleged are set forth in paragraphs 20, 28, and 31 to 33.

Each of those acts followed shortly after the Plaintiff engaged in EEO activity. Moreover, as alleged in paragraph 40, they are part of a long pattern of material adverse actions, statements and antagonism against the Plaintiff. As alleged, the adverse actions included loss of pay, credentials, duties, opportunity for advancement and positions.

42.     The Plaintiff has worked at the James A. Haley VA since 2005. He was denied repeated promotions which would have included increases in pay and benefits and advancement in positions.

43.     As alleged in paragraphs 25-36, the aforesaid adverse employment actions, other adverse actions, misconduct, and other conduct, acts and omissions to the Plaintiff's detriment, were all taken (or failed to be taken) by administrators and managing and supervisory personnel with the Haley VAHCS in retaliation for the protected or EEO activity of the Plaintiff including those set forth above. In the alternative they were motivated by his EEO activity. They are the direct and proximate result of the EEO activity.

44.     The Defendant, through the supervisors of the Plaintiff, has engaged in, directed, and/or ratified retaliatory conduct, and has frustrated the Plaintiff's efforts to obtain relief and intentionally maintained these retaliatory and unlawful practices to the detriment of its employees. The Defendant at all relevant times knew or should have known of the retaliatory actions being taken against the Plaintiff and failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

45.     The Defendant, through acceptance of such conduct in this case and others, has fostered an attitude among administrators, managers and supervisors at the Haley VAHCS that retaliation against employees in order to discourage protected EEO activity is an acceptable employment practice.

46.     As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

47.     Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT II

### Harassment and Hostile Work Environment

48.     Plaintiff, Dennis McLain sues David J. Shulkin M.D., Secretary, Department of Veterans Affairs for harassment and hostile work environment under Title VII.

49.     Plaintiff incorporates and re-alleges paragraphs 1 through 38. The discrete acts alleged are set forth in paragraphs 20, 28 and 31 to 33. The remainder of the allegations provide evidence of harassment and hostile work environment.

50.     As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and

conditions of employment by the Defendant due to harassment and hostile work environment.

51.     The above harassment and hostile work environment was engaged in by the supervisory personnel within the VA in order to harass the Plaintiff due to his EEO activity, or in the alternative was motivated by that activity. Given the long history of these actions and based upon all the conduct alleged in paragraphs 5 to 36, the Defendant at all relevant times knew, or should have known, of the above- referenced harassment and hostile work environment against the Plaintiff. The Defendant has failed to take necessary action to prevent or correct the harassment and hostile work environment and, in fact, ratified such conduct. The Defendant, through the Plaintiff's managers and supervisors has engaged in, directed or ratified conduct, and denied and frustrated the Plaintiff's efforts to obtain relief. The Defendant, through acceptance of the complained of conduct within the nursing department, has fostered an attitude among supervisors within the Haley VAHCS that harassment and hostile work environment are acceptable employment practices. Because of the willful actions of the Defendant and its administrators, managers and supervisors, or in the alternative because of actions motivated by EEO animus, and as a proximate cause thereof, the Plaintiff has been and will continue to be denied his rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

52.     As a result of the foregoing, the Plaintiff has been damaged.  Those damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to his professional reputations; and humiliation, degradation,

embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer from these damages absent relief from this Court.

53.        Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions precedent, or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## Count III

### Injunctive Relief

54.        Plaintiff, Dennis McLain, sues Defendant, David J. Shulkin as Secretary of the Department of Veterans Affairs.

55.        Plaintiff incorporates and re-alleges paragraphs 1 through 36; 39-45; 50-52.

56.        Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

57.        There is (1) a substantial likelihood of success on the merits; (2) irreparable injury that will be suffered unless an injunction is issued; (3) the threatened injury to the Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest.

58.        Plaintiff requests the Court award his attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

a.  Violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as described above including retaliation against Plaintiff for protected or EEO activity and discrimination based on age and gender (male).

b.  Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demand trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff, Dennis McLain hereby demands a trial by jury on all issues so triable.

Dated:     May 30, 2017

Respectfully submitted,

Joseph D. Magri
Florida Bar No.: 0814490
Merkle Magri & Meythaler, P.A.
5601 Mariner St., Suite 400
Tampa, FL 33609
Tel.: (813) 281-9000
Fax.: (813) 281-2223
Email: jmagri@merklemagri.com